United States District Court
Southern District of Texas

**ENTERED**

March 13, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KRYSTLE DAVIS, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:24-cv-1019 |
| | § | |
| CENTERPOINT ENERGY, INC., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before this Court is CenterPoint Energy's ("Defendant" or "CenterPoint") Motion to Dismiss. (Doc. No. 3). Plaintiff Krystle Davis ("Plaintiff" or "Davis") responded in opposition, (Doc. No. 6), to which Defendant replied, (Doc. No. 8). Having considered the motion and the applicable law, the Court **GRANTS** the motion as to Plaintiff's Texas Labor Code claim and § 1981 Retaliation claim, which are hereby **DISMISSED**, but **DENIES** the motion as to Plaintiff's. § 1981 Race Discrimination claim. (Doc. No. 3).

### I.    Background

Plaintiff, an individual of African American descent, filed this suit against her former employer for racial discrimination. (Doc. No. 1 at 1). Plaintiff alleges that, because of her race, she was subjected to unfair treatment and a systemic pattern of harassment and hostility by her supervisor at CenterPoint Energy. (Doc. No. 6 at 1–2). According to her Complaint, this racially discriminatory conduct culminated in several unfounded disciplinary hearings and, eventually, her termination. (*Id.* at 2).

Plaintiff began working at CenterPoint in November 2019 as a Utility Agent. (*Id.*). She alleges that throughout her employment she was treated more harshly, given fewer opportunities, and disciplined more severely than similarly situated, non-African American colleagues. (*Id.*).

Plaintiff alleges that she raised concerns on several occasions about operations and systems efficiencies to her supervisor who then allegedly retaliated through disciplinary actions and artificially lowering her customer satisfactions scores. (Doc. No. 1 at 10). In February 2022, Plaintiff alleges that she began meeting with a department manager to discuss the treatment by her supervisor, but that the meetings only led to more significant harassment and unfair treatment. (Doc. No. 6 at 2). Finally, Plaintiff alleges she was terminated due to her complaints and grievances with her supervisor and other managers. (*Id.*).

Plaintiff brought this suit claiming damages for racial discrimination under 42 U.S.C. § 1981, retaliation under 42 U.S.C. § 1981, and racial discrimination under Texas Labor Code § 21.201–202. (Doc. No. 1). Defendant filed a Rule 12(b)(6) motion to dismiss on several grounds. (Doc. No. 3). First, Defendant argues that Plaintiff's racial discrimination claim under § 1981 must be dismissed because she has failed to allege a legally sufficient comparator who was treated differently under similar circumstances. (*Id.* at 4). Second, Defendant argues that Plaintiff's retaliation claim must be dismissed because she did not allege that she complained to CenterPoint about the racial discrimination. (*Id.* at 6). Third, and finally, Defendant argues that Plaintiff did not exhaust her administrative remedies, and thus her Texas Labor Code claim is barred. (*Id.* at 8).

## II.     Legal Standard

A defendant, or Plaintiff who is the subject of a counterclaim, may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

2

*Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 609 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.    Analysis

#### A. Section 1981 Racial Discrimination Claim

Plaintiff's first claim is for racial discrimination under 42 U.S.C. § 1981. This section prescribes an independent cause of action against private employers for discrimination on the basis of race. Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981(b), in turn, defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In

short, the statute serves to protect against racial discrimination for certain enumerated activities. While the remedies spawning from liability are somewhat different under the two statutes, the Fifth Circuit has held that the "analysis of a discrimination claims under § 1981 is identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017).

To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that (1) they are a member of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *Body by Cook, Inc.*, 869 F.3d at 386. Although "naked allegation[s]" of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence. *Body by Cook*, 869 F.3d at 386–87; *Bellows*, 118 F.3d at 274. An allegation that similarly situated non-minorities received better treatment "could create the necessary inference and set the predicate for establishing the section 1981 claim." *See Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished); *cf. Lindsay v. Yates*, 498 F.3d 434, 439–40 (6th Cir. 2007) (holding that plaintiffs-purchasers pleaded a § 1981 claim by alleging that (1) sellers advertised their house for sale; (2) plaintiffs signed a purchase agreement and made deposit; and (3) sellers terminated the contract three weeks after signing agreement and one day after agent learned buyers were black). *Body by Cook*, 869 F.3d at 386–87.[1]

The question before this Court is whether Plaintiff has alleged facts to plausibly set outeach of the three elements. The first element is not contested—Plaintiff pleaded that she is African American, and Defendant concedes as much. *See* (Doc. No. 6 at 5). Similarly, Defendant does not

---

[1]     Accordingly, at the pleading stage, a plaintiff need not plead a prima facie case under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

challenge the third element—Plaintiff's employment, though at will, is protected from racially discriminatory action by § 1981. The second element, however, is hotly contested.

Defendant argues that Plaintiff has failed to allege facts that plausibly demonstrate different treatment with someone similarly situated outside of the protected class. (Doc. No. 6 at 5). To state a claim, Plaintiff must allege that a similarly situated employee was not only treated more favorably, but treated more favorable in *nearly identical circumstances*. *Okoye v. Univ. of Tex. Hous. Health Sci. Center*, 245 F.3d 507, 514 (5th Cir. 2001).

Plaintiff points to her allegations that an employee named "Amanda," a non-African American Sales Team Lead, was given a verbal warning for the exact same conduct that led to Plaintiff receiving "a final write-up." (Doc. No. 1 at 10). Defendant contends that this allegation, without more context regarding "Amanda's" comparative seniority, responsibilities, and disciplinary history, is inadequate. (Doc. No. 6 at 5). Plaintiff contends that she adequately sets out the conduct for which she was disciplined and provides an example of a non-African American Sales team lead who was not written up for the same conduct.

While Plaintiff's allegations are by no means *overly* specific, the Court construes the allegations about "Amanda" within the context of other allegations—namely, Plaintiff's claim that this disparate treatment occurred with other co-workers as well. Specifically, Plaintiff states that the conduct subject to the write-up "was an issue with several agents across the board, and the other agents received a verbal warning, and Ms. Davis was given a final write-up instead of a verbal warning . . . ." (Doc. No. 1 at 10). Additionally, Plaintiff pleaded that the racial nature of her differential treatment was further implied by the fact that she was replaced immediately by a non-African American sales agent. (Doc. No. 1 at 14).

At this stage, the Court must take all plausibly pleaded allegations as true and grant inferences for the Plaintiff. *Ashcroft*, 556 U.S. at 678. As such, the Court finds that the allegations about the supervisor's treatment of Amanda, a similarly situated comparator, combined with the immediate replacement of Plaintiff with a non-African American, are sufficient to establish an inference of racial discrimination. As Plaintiff has pleaded sufficient allegations to establish the second element, and the first and third elements are not challenged, Plaintiff has adequately pleaded her racial discrimination claim. On this claim the motion to dismiss is **DENIED**.

### B. Section 1981 Retaliation Claim

The elements of a § 1981 retaliation claim are: (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action. *Body by Cook*, 869 F.3d at 390 (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339, 340 n.8 (5th Cir. 2003)). While Defendant does not concede that the second and third elements are met, Defendant's motion to dismiss attacks the first element exclusively. (Doc. No. 3 at 6–7).

Defendant argues that Plaintiff's Complaint fails to plead a retaliation claim because it contains no factual allegations showing that Plaintiff alerted CenterPoint employees of the unlawful discrimination she claims. (Doc. No. 3 at 7). Further, Defendant contends that Plaintiff's alleged complaints of unfair treatment do not satisfy this requirement because her grievances did not set out a racial basis for that mistreatment. (*Id.*). Plaintiff contends that the complaints and grievances she filed are sufficient to establish opposition to the discriminatory treatment. (Doc. No. 6 at 7–8).

An employee engages in a protected activity under Section 1981 when "he has opposed any practice made unlawful by [Title VII]." 42 U.S.C. § 2000e-3(a). In other words, to qualify as

a protected activity, the employee's conduct must have "opposed" the employer's practice, and that opposed practice must have been unlawful. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Plaintiff's Complaint does not set out sufficient factual allegations to establish that her complaints and grievances opposed the unfair treatment on the grounds that it was racially discriminatory. Plaintiff provides several examples of complaints she made regarding her supervisor's conduct but none of them seem to have been about race. For example, Plaintiff describes a meeting with an Human Resources representative that she requested to complain that her supervisor wrote her up for being late when her shift had not yet started. (Doc. No. 1 at 7). When describing what she communicated to the HR representative, Plaintiff says that she was "singled out due to her being vocal about other concerns prior to the incident. . . ." (*Id.*). Based on the Court's reading, in context this seems to refer to prior concerns Plaintiff raised regarding "a lot of systems issues, and customers [] calling in to complain about their appointments being rescheduled for service repairs." (Doc. No. 1 at 4). Plaintiff describes that she raised these concerns to her supervisor who was then dismissive of her ideas to resolve the issues. (*Id.* at 5).

The next alleged occurrence described by Plaintiff was a meeting with her department manager to address concerns that her supervisor was refusing to correctly record Plaintiff's customer scores. (*Id.* at 8). Plaintiff alleges that she stated she "wasn't being treated fairly." (*Id.*). These were the only allegations that Plaintiff claims to have raised issues with Defendant, and in neither instance did Plaintiff allege that her supervisor's unfair treatment was based on racial discrimination or because she had complained of discriminatory conduct.

At this stage, Plaintiff does not have to adequately plead that the actions she protested *were* racial discrimination. *Scott*, 16 F.4th at 1210. Plaintiff does, however, have to plead that she did

protest what she believed to be racial discrimination. *Id.* Here, Plaintiff adequately pleads that she protested unfair treatment but does not seem to have conveyed any belief or notice to Defendant's employees that her mistreatment was based on racial discrimination. Rather, Plaintiff's first formalized complaint to HR explicitly stated that she believed the unfair treatment was "due to her being vocal about other concerns prior to the incident. . . ." (Doc. No. 1 at 7). Theoretically, the referenced "other concerns prior" could have been allegations of racial discrimination, but Plaintiff does not plead that.

Plaintiff fails to provide sufficient factual allegations to establish that she was fired for opposing unfair treatment that was based on racial discrimination. Instead, Plaintiff pleaded that she was fired for protesting unfair treatment based on instances in which she raised concerns about systems and operations failures. This is insufficient to establish a retaliation claim under § 1981. On this claim, the motion to dismiss is **GRANTED**, and Plaintiff's retaliation claim is **DISMISSED** without prejudice.

### C. Texas Labor Code Claim for Racial Discrimination

To bring a claim under Chapter 21 of the Texas Labor Code, a claimant must first exhaust her administrative remedies with the Texas Workforce Commission. *See* TEX. LAB. CODE § 21.201; *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004). One aspect of this administrative compliance is that "a complaint under this subchapter must be filed not later than the 180th day after the alleged unlawful employment practice occurred." TEX. LAB. CODE § 21.202. While the 180-day requirement found in § 21.201 is not jurisdictional, it is mandatory. *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020). The timeline of relevant events as Plaintiff alleges is as follows:

(1) October 12, 2022 – Plaintiff is terminated from CenterPoint.

(2) In early December 2022, Plaintiff "opened a claim with the EEOC."

(3) On April 13, 2023, Plaintiff was denied unemployment benefits.

(4) On April 19, 2023, Plaintiff "submitted an appeal [of the denial] to the Texas Workforce Commission.

(5) On May 17, 2023, Plaintiff dual-filed a charge of discrimination with the EEOC and Texas Workforce Commission against Defendant for racial discrimination.

(Doc. No. 1 at 3; 13). The two charges of discrimination filed on May 17, 2023, were 217 days after the alleged discriminatory termination. Thus, the question for the Court is whether any of Plaintiff's actions prior to that date constitute "a complaint under [TEX. LAB. CODE § 21.202]."

Plaintiff claims that her Texas Labor Code claim should not be dismissed because her EEOC intake questionnaire, filed in early December of 2022, constitutes a charge. (Doc. No. 6 at 9). An EEOC complaint of employment discrimination is sufficient to satisfy the 180-day filing requirement and avoid the time bar. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 (Tex. 2012). Further, an EEOC questionnaire *can* satisfy the requirements of § 21.202, but only "when it can be 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.'" *Yeh v. Chesloff*, 483 S.W.3d 108, 114 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).

Following *Holowecki,* the EEOC changed the intake form to require employees to clearly express their intent by checking one of two boxes. *Brahmana v. Lembo,* No. C–09–00106 RMW, 2010 WL 965296, at *1 (N.D.Cal. Mar. 17, 2010). An intake questionnaire that has a checked Box 1, next to the statement "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above," qualifies as a "charge." *Henderson v. Bank of Am., N.A.,* Civ. Action No. 2:14–cv–895, 2015 WL 2374519, at *2 (E.D. Tex. May 15, 2015); *Crevier–Gerukos v. Eisai, Inc.,* Civ. Action No. H–11–0434, 2012 WL 681723, at *8 (S.D. Tex. Feb. 29,

9

2012) (citing additional unpublished cases in support of proposition). On the other hand, an intake questionnaire that has a checked Box 2, next to the statement "I want to talk to an EEOC employee before deciding to file a charge of discrimination," and "I understand that by checking this box, I have not filed a charge with the EEOC" does not constitute a charge. *See Lugo–Young v. Courier Network, Inc.,* No. 10–CV–3197 (RRM)(LB), 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012) (holding that, based on plain language in Box 2, plaintiff's intake questionnaire could not be construed as timely EEOC charge); *see also Hawthorne v. Vatterott Educ. Ctrs. Inc.,* No. 09–CV–442–TCKPJC, 2010 WL 3258560, at *4 (N.D. Okla. Aug. 17, 2010) (indicating that employee could lose rights by checking second box).

Plaintiff's Complaint does not even allege that a questionnaire was filled out, merely that she "opened a claim" with the EEOC. (Doc. No. 1 at 13). Nevertheless, presuming that "opened a claim" means filling out a questionnaire, there is no basis for the Court to infer whether Plaintiff chose "Box 1" or "Box 2." In fact, Plaintiff's Response in Opposition to the Motion to Dismiss acknowledges that the Complaint does not allege that any box was checked and offers to file a Freedom of Information Act request to determine which box Plaintiff selected. (Doc. No. 6 at 11). Also complicating things for Plaintiff is the fact that she pleaded her May 17, 2023 appointment with the EEOC was "to finalize the filing of her EEOC charge." (Doc. No. 1 at 13). Logically, Plaintiff cannot now say that her December 2022 questionnaire served as an official complaint, (Doc. No. 6 at 10), after originally pleading that six months later she "finalize[d] the filing of her EEOC charge" in May of 2023. (Doc. No. 1 at 13). Thus, Plaintiff failed to properly plead the satisfaction of her administrative obligations. On this claim, the motion to dismiss is **GRANTED**, and Plaintiff's Texas Labor Code claim is therefore **DISMISSED** without prejudice.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss the § 1981 Retaliation claim and Texas Labor Code claim and **DENIES** the motion as to Plaintiff's § 1981 Racial Discrimination claim. Therefore, Plaintiff's § 1981 Retaliation claim, and Texas Labor Code claim are **DISMISSED** without prejudice.

Signed on this ___13th___ day of March 2025.

_____
Andrew S. Hanen
United States District Judge